IN THE MATTER OF THE PEOPLE OF THE STATE OF NEW YORK, BY AUGUSTUS SCHOONMAKER, JR., ATTORNEY-GENERAL, *v.* THE ATLANTIC MUTUAL LIFE INSURANCE COMPANY.

*Chap.* 902 *of* 1869 — *when the court will not direct a receiver to continue the business of the company.*

The authority conferred upon the court by section 7 of chapter 902 of 1869, to direct the receiver of an insurance company, upon certain facts being established, to continue the business considered and such direction refused under the circumstances of this case.

APPEAL from an order made at the Special Term, upon the filing of the report by the actuary appointed by the Receiver of the Atlantic Mutual Life Insurance Company, directing the receiver to take the necessary steps to convert the assets of the company into cash, and distribute the same as provided by law.

The appellants insisted that the court should have directed the receiver to continue the business, as is authorized by section 7 of chapter 902 of 1869.

*The Attorney-General,* for the people.

*William Barnes,* for the Atlantic Mutual Life Insurance Company.

*S. W. Rosendale,* for the Superintendent of the Insurance Department.

LEARNED, P. J.:

Under section 7, chapter 902, Laws of 1869, it has been, upon proper application, decided by this court that the assets and funds of this company are not sufficient to justify the further continuance of the business. This decision of the Special Term has been affirmed by the General Term and by the Court of Appeals. That question, at least, then, must be deemed to be settled.

There are some provisions in the following sections of that act which seem to indicate, that in one case the receiver, in the closing up of the affairs of the company, is to continue to receive the future premiums on policies which had been issued at the time of his appointment; and that, in respect to these policies, he is to continue the business, at least until there be an accumulation of funds sufficient to meet all the oligations of the company, and to pay its stock. (Sections 8, 9, 10.)

I do not propose to examine this somewhat peculiar scheme for having this court, through its officer, carry on life insurance business. It is certainly undesirable that this court, or its officer, should be thus engaged, especially when we consider that in every such case it must have been already decided that the assets and funds were not sufficient to justify the further continuance of the business. At least, it should appear, from the facts before us and from the statute, that it is our imperative duty to have the. receiver carry on business before we undertake it.

The statute says, that if it shall be found, by the actuary's report, that the securities in the department, and the assets and credits, including the future premiums that will accrue on the outstanding policies, and other obligations of the company, are sufficient to pay all the policies, annuities, and other obligations as they mature, and the legal costs and expenses of the business; and if the actuary's report be confirmed by the court, then the receiver is to notify the policyholders, etc.

It will be seen that the actuary's report is not conclusive, but that the court must confirm the report before its officer is to attempt to continue the business. And it appears to me that this question is not one of mere mathematical calculation. A great deal has been said in the argument about net valuation and gross valuation. It has been urged that the statute requires the actuary to make

his report on the basis of one valuation, while he has actually made it on the basis of the other. I think there are other matters to be considered. Since August 1, 1877, or about that time, this company has been in a receiver's hands. For several months prior thereto, the proceedings had been pending. A deposit of some $118,000, made in the Hope Banking Company, was secured by collateral, worth about $30,000, and that is all the deposit is worth according to the actuary's report. The whole capital stock is only $110,000.

Now, without referring in detail to the facts, which have appeared in regard to the company, it is apparent that its credit is gone. An opportunity had been afforded by the Special Term, before the appointment of a receiver, for the stockholders to make good the deficiency. They failed to do so. And the question now must be not merely whether *if* the future premiums should be paid, they and the existing assets would be sufficient to pay the policies, but there must be another question decided, before we authorize any proceedings towards carrying on the business through a receiver. That question is whether, under the circumstances, there will probably be any considerable amount of future premiums paid. It is useless to attempt to carry on this business if the circumstances are such that few, if any, policyholders will probably, in fact, pay any future premiums. I am satisfied from all the circumstances, that an attempt to notify the policyholders and require them to pay their premiums, would now be a failure. And not only would it be a failure, but it would result in injustice to them. Few would wish to pay premiums to the receiver of a discredited corporation. And to forfeit their policies for non-payment would afford an opportunity for great speculation and wrong. It would be like that practice of some of these insurance companies which has acquired the slang name of *freezing* out the policyholders.

For these reasons, I think that the order should be affirmed.

Present — LEARNED, P. J., BOARDMAN and TAPPAN, JJ.

Order affirmed, without costs.